UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO


| | | |
|---|---|---|
| CORY MOORE | ) | CASE NO.  1:12 CV 2227 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| DELTA GLOBAL SERVICE., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |


*Pro se* plaintiff Cory Moore filed the above-captioned *in forma pauperis* Complaint against his employer Delta Global Services (DGS) and the Director of Human Resources at DGS in Atlanta, Georgia.[1]   Alleging discrimination and retaliation, Mr. Moore asserts this Court's jurisdiction pursuant to Title VII of the Civil Rights Act of 1964.  The day after filing his original Complaint, Mr. Moore filed a "Supplement Complaint" to provide details in support of his claims.  In his prayer for relief, he seeks to recover lost wages for pain and suffering.

*Background*

The relevant events giving rise to this Complaint began in May 2010, when Mr. Moore allegedly made several requests to his supervisor, Frank Rosario, and Human Resources

---

[1]The Court presumes the HR Director in Atlanta, Georgia is at the corporate level since Mr. Moore was employed at DGS in Cleveland, Ohio.

representative Lasharn Carrington for a job transfer to Florida.  Mr. Rosario advised Mr. Moore that

there was no possibility for him to transfer.  Ms. Carrington, however, allegedly advised Mr. Moore

to contact the office in Orlando, Florida to speak with the station manager.

After telephoning station manager Marlon Moultrie in Florida, Mr. Moore arranged to meet

with him in Orlando, Florida.  Upon his arrival at the airport in Orlando, Mr. Moore was met by Mr.

Moultrie "with surprise" that he actually traveled that distance for a meeting.  The two spoke briefly,

with Mr. Moultrie asking a few questions; including, how soon Mr. Moore could start working in

Florida.  At that point Mr. Moore telephoned Mr. Rosario in Cleveland to solicit his approval for the

transfer.  Mr. Rosario advised him to first return to Cleveland where they would discuss his request

at that time.

When Mr. Moore returned to work in Cleveland, he telephoned Ms. Carol at DGS's corporate

Human Resources office on June 21, 2010 and requested information about the company's transfer

policy.  She explained that an employee needed to work at DGS at least 6 months and that signatures

of both the transferor and transferee station managers were required to agree to the transfer.

The following day Mr. Moore was called to a meeting with Mr. Rosario and Ms. Carrington.

Mr. Rosario demanded to know why Mr. Moore telephoned DGS's corporate office.  Moreover, he

considered the action "disrespectful."  When Mr. Moore attempted to explain his rationale, Mr.

Rosario allegedly interrupted, shouted that he did not care about Mr. Moore's personal life and

threatened to take him off the schedule for the remainder of the month.  At that point, Mr. Moore felt

he was being disrespected as a "young black organized man"and explained he would not remain in

the room to treated poorly and left. (Pet.'s Supp. Compl. at 2.)

The day after the meeting, Mr. Moore telephoned Ms. Carol to complain that Mr. Rosario

used "intimidation and discrimination" to verbally abuse him by speaking to him like a child.  She responded that she would speak with Mr. Rosario and Ms. Carrington, and quickly hung up the telephone.

Shortly afterward, Mr. Rosario called Mr. Moore into his office, along with Ms. Carrington. He instructed Mr. Moore to "take this little sheet of paper and call this [sic] numbers in Orlando[,] Florida and that they were filling a P.C.S. and that my last day was Sunday June 27."[2] (Pl.'s Supp. Compl. at 3).  A great deal of confusion ensued after this statement.  Mr. Moore responded that he already had the telephone numbers, but did not understand why June 27 was his last day.  Mr. Rosario then challenged why Mr. Moore contacted the corporate office a second time.  During this exchange, Ms. Carrington allegedly attempted to quiet Mr. Rosario, while promising Mr. Moore that she would "call and speak with someone."   In the interim, she suggested he return to work, while Mr. Rosario warned Mr. Moore "don't leave out [sic] the office or I will take your badge and your parking pass for being in [sic] cooperative."   (Pl.'s Supp. Compl. at 3).   Bewildered by Mr. Rosario's comments, Mr. Moore telephoned his father for advice.

Two days after meeting with Mr. Rosario, Mr. Moore alleges he was advised by Ms. Carol to "take my badge and leave and come back to work on Friday, June 25."  The day before she suggested he return, Mr. Moore again telephoned Ms. Carol regarding the status of his employment. She explained he was suspended for two weeks "for being in [sic] cooperative and on the phone." (Pl.'s Supp. Compl. at 3).   When he asked for documentation of his suspension, Ms. Carol stated there was no documentation and asked that he stop telephoning her.  Mr. Moore then telephoned Mr. Rosario to ask what the status of his employment was and why his badge did not work.  Initially, Mr.

---

[2]Mr. Moore does not explain the meaning of the acronym "P.C.S."

-3-

Rosario stated "it was because of my transfer." *Id*.  After Mr. Moore disclosed that he had already

spoken with Human Resources, Mr. Rosario advised "he was suspended and . . . no longer work[ed]

there." *Id.*

A letter from the United States Equal Employment Opportunity Commission (E.E.O.C.),

Cleveland Field Office, dated May 30, 2012, reveals Mr. Moore filed a charge against DGS with the

Commission.  The letter is notice of the E.E.O.C.'s dismissal of Mr. Moore's race discrimination

charge against DGS for denying his request for transfer.  The E.E.O.C. investigation revealed DGS

granted Mr. Moore a transfer, but he declined based on personal reasons.  The underlying issue

became a dispute over how long DGS delayed his transfer request, which the E.E.O.C. noted was

not considered an adverse employment action.  Also, the E.E.O.C. confirmed Mr. Moore was

suspended after a verbal confrontation with his supervisor, but was not terminated from his position

at DGS.  The E.E.O.C. attached a copy of its Dismissal and Notice of Suit Rights, dated May 30,

2012, to its letter.

### Standard of Review

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365

(1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), a district court is required to

dismiss an action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be

granted, or if it lacks an arguable basis in law or fact.  *Neitzke v. Williams*, 490 U.S. 319 (1989);

*Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197

(6th Cir. 1996).  For the reasons stated below, this action is dismissed pursuant to section 1915(e).

### Title VII Discrimination

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., provides

["i]t shall be an unlawful employment practice for an employer ... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... race...." 42 U.S.C. § 2000e-2(a)(1). While Mr. Moore identifies his race as Black, that singular fact does bring his claims under the protection of Title VII.

Without question, *pro se* pleadings are liberally construed. *Boag v. MacDougall*, 454 U.S. 364, 365 (1982); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, generous construction of *pro se* pleadings is not without limits. *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985).

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement. *Id.* It must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*

When a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, a claim has facial plausibility. *Id.* The plausibility standard requires more than a scant possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's

-5-

liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id*.

Mr. Moore alleges his supervisor spoke to him harshly and refused to immediately approve his transfer because he is Black.  Other than identifying himself as a member of the protected class under Title VII, Mr. Moore fails to allege that the Defendants treated Mr. Moore poorly or less favorably based solely on his race.  Moreover, Mr. Moore does not suggest other employees outside of his protected class were treated more favorably.  While a plaintiff is not required to state a *prima facie* case as this stage, *see Swierkiewicz v. Sorema N. A*., 534 U.S. 506 (2002), he must still state plausible claims of employment discrimination based on race in violation of Title VII.  This Court cannot draw a reasonable inference that DGS is liable under federal law for the misconduct alleged.  Accordingly, Mr. Moore has failed to state a claim for relief under Title VII.

### *Conclusion*

Based on the foregoing, Mr. Moore's Motion to Proceed *In Forma Pauperis* is granted and the Complaint is dismissed pursuant to 28 U.S.C. §1915(e), but without prejudice to any state law claims he may seek to assert.  Further, the Court certifies that an appeal from this decision could not be taken in good faith.[3]

IT IS SO ORDERED.

s/ Christopher A. Boyko

DATED: September 21, 2012              CHRISTOPHER A. BOYKO
                                       UNITED STATES DISTRICT JUDGE

---

[3]  28 U.S.C. § 1915(a)(3) provides: "An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith."